CHARLES C. BLACK, receiver,

·v.

HOBART TRUST COMPANY et al.

[Submitted December 15th, 1902.  Decided December 29th, 1902.
Filed April 6th, 1903.]

1. *P. L. of 1896 p. 283 § 18*, as amended by *P. L. of 1901 p. 245*, authorizes corporations to issue preferred stock, which may pay cumulative dividends, and provides that, in case of insolvency, corporate debts and other liabilities shall be paid in preference to the preferred stock.—*Held*, that holders of preferred stock, paying cumulative dividends under the statute, were precluded, on the company's insolvency, from enforcing their mortgage security to the detriment of general creditors, as they could not reap the advantages of the statute, while ignoring its burdens.

2. The mortgage recited that the preferred stock thereby secured should have a cumulative dividend and be subject to redemption on June 1st, 1906, and, in case of the company's previous dissolution, should be paid out of its assets after the payment of its just debts and liabilities. If the stock was not redeemed by June 1st, 1906, and the mortgaged premises had not been before disposed of, they were to be sold, and redemption effected, including unpaid dividends. The company was, in fact, dissolved and the property disposed of before that date.—*Held*, that the terms of the mortgage also precluded the preferred stockholders from enforcing it against the fund derived from the property, to the detriment of general creditors.

Black *v.* Hobart Trust Co.

3. The fact that the mortgage was recorded before the claims of the general creditors were incurred would not affect the case; such creditors having the right to rely on the statute and the terms of the mortgage, giving them a preference.

4. The fact that the postponement of the preferred stockholders to the general creditors might permit the company's promoters to work a fraud on the purchasers of the preferred stock would also not affect the case.

The complainant is the receiver of the Colonial Clock Company, an insolvent corporation of this state, and files his bill for directions as to the disposition of certain funds in his hands, the proceeds of the sale of certain real estate belonging to the corporation.

The bill sets out a mortgage given by the corporation to the defendant the Hobart Trust Company, in trust for the other defendants, and alleges that it is void as against the general creditors of the company, and prays relief against it, and that the fund in question may be declared to be assets to be divided among the general creditors.

The complainant was appointed receiver on November 26th, 1901, and applied to the court, by petition, in January, 1902, for an order for the sale of the lands in question free and clear from the encumbrance of the mortgage and other liens which he found upon it. An order in accordance with that petition was granted, and the receiver was directed to hold the proceeds of the sale in place of the land itself, subject to the further order of the court.

Those proceeds amount to the sum of $8,500.

The claims of general creditors against the insolvent corporation amount to a little less than $8,000; and there are, besides, between $500 and $600 of preferred claims. At that stage of the proceedings, by leave of this court, the present bill was filed.

A joint answer was filed by all of the *cestuis que trustent* under the mortgage. The trustee company did not answer, and a decree *pro confesso* was made against it. The cause was duly referred to Vice-Chancellor Pitney, and set down for hearing on the 20th of October, 1902. On that day the complainant was ready for trial, and the defendants asked for a postponement, on the ground that their solicitor and counsel, Mr. Ely,

was at that moment engaged in the trial of a cause in the city of New York. Conceiving that the reason for a postponement was quite insufficient, the vice-chancellor proceeded and heard the cause. Little or no evidence, beyond the record of the insolvency proceedings, was taken, because the complainant relied upon the facts appearing on the face of the mortgage.

Subsequently, Mr. Ely asked to have the cause opened for further hearing, and for leave to file an amended answer. This was opposed by the complainant, but the vice-chancellor determined to consider the cause as if the facts set up in the proposed amended answer were proven, expressly saving, however, the rights of the complainant to have the defendants confined to the allegations of the first answer.

*Mr. J. Herbert Potts,* for the complainant.

*Mr. Addison Ely,* for the answering defendants.

Pitney, V. C.

The contest here is between the general creditors of the insolvent corporation and certain persons named as preferred stockholders in the mortgage which is attacked.

The corporation was organized on October 30th, 1900, and on July 6th, 1901, it executed the mortgage in question, which was duly recorded on the 19th of July, 1901.

It recites a resolution of the directors of the corporation, adopted on the 6th of June, 1901, which recites that the company desired to increase its *capital* for the purpose of procuring a proper building and plant, &c., and does *not* desire to mortgage any part of its property, nor issue bonds for such purpose, and that Mr. Brunner, one of the defendants, has agreed to raise the sum of $18,000, as the same may be required for the purposes aforesaid, under the following conditions:

*First.* The company shall cause its certificate of incorporation to be amended by the unanimous consent of all the stockholders, so that the same may permit an issue of *preferred stock,* to an amount not greater than $18,000,

27

"said preferred stock to have a fixed dividend of seven per cent. per annum, cumulative, to be paid annually on the first day of June before any dividend is set apart or paid to the common stock, subject to redemption at par on June 1st, 1906, and in case of the dissolution of said company before said date, to be paid first out of the assets of this company *after the payment of its just debts and liabilities and before any distribution or payment to the holders of common stock shall be made.*"

*Second.* The company shall convey to the Hobart Trust Company, of the city of Passaic, its factory site, in trust, (1) to hold the same, keep the same insured, and pay the taxes and assessments; (2) as security for the payment of the annual dividend of seven per cent. provided to be paid on the said preferred stock; (3) on default in the payment of any dividend, to sell and dispose of the property to pay said dividend, and hold the surplus to secure the payment of further dividends; (4) *after June 1st, 1906, if not before disposed of, to sell and dispose of the said property, either at public or private sale, and redeem, at par, all the preferred stock that may then be outstanding and issued to the stockholders;* (5) if, on the 1st of June, 1906, the company shall have redeemed all the principal of the stock and paid all accrued dividends, then the trustee shall reconvey.

It then recites that it was resolved that the proposition be accepted in all its terms; that the resolution be submitted to the stockholders; that it was so submitted and was approved by all the stockholders; that, on July 12th, 1901, the board of directors examined the instrument proposed to be executed and approved the same; that all the preferred stock had been subscribed, and that the corporation had made out certificates for one hundred and eighty shares of $100 each, giving a list of the persons who had subscribed the same, among whom was Mr. Brunner for $8,000. It then recites a resolution, on the 12th of July, 1901, making the Hobart Trust Company a transfer agent of the preferred stock authorized to be issued and secured by the trust deed, and that the trust company was requested to countersign certificates of the same; and that certificates numbered from one to twenty-six had been countersigned, which includes all the subscriptions.

The deed proceeds to say that the party of the first part, in order to secure equally the payment of the *principal and dividends* on the stock as the same may be issued and delivered hereunder, or to whom the same may hereafter be transferred, conveys the property to the trust company, upon the following trusts now enumerated:

(1) As before stated, to keep the premises insured, and pay the taxes and assessments.

(2) To hold the property as security for the payment of the annual dividend of seven per cent. upon its $18,000 of preferred stock.

(3) On default in the payment of the dividend for three months, to sell and dispose of the premises at public sale to pay off said dividend, and hold the surplus, properly invested, to secure the payment of future dividends as due or the redemption of the principal.

(4) *After June 1st, 1906,* if the premises have not been before disposed of,

*"to sell and dispose of the said property either at public or private sale, and out of the proceeds to redeem at par all of said preferred stock that may then be outstanding and issued to stockholders, together with any arrears of dividends that may be due upon any of said preferred stock."*

(5) If, on the 1st day of June, 1906, all of the stock shall have been released, then to reconvey the property.

The bill further alleges that the shares of preferred stock subscribed by the twenty-six subscribers, or so much as have been paid for, are now held by twenty persons, naming them, who are defendants to the suit; and then sets out the insolvency proceedings, the order of the court to sell, and the sale.

The answer actually filed admits all the facts alleged in the bill; sets up that the original certificate of incorporation was duly amended so as to authorize the issuing of the stock; denies the legality of the order that the property should be sold free and clear of encumbrances, and alleges that $9,100 only of the preferred stock has been actually issued to the defendants named; challenges the equity of the complainant's bill, and asserts the rights of defendants as mortgagees.

The amended answer sought to be filed alleges that the money was advanced for the express purpose of buying the land in question and erecting a factory thereon, and that the agreement, in fact, was that the defendants should be secured for the amount so advanced by a mortgage, and that, at the time the money was advanced and the property bought and the building erected, there were no debts due by the insolvent corporation, and that the moneys advanced by the defendants were advanced upon the security of the mortgage and in consideration thereof. And the defendants urge, as a further equity, that the proceeds of the sale represent the very money which the defendants advanced and invested in the purchase of the lot and the building of the factory.

It is worth while just here to state the provision of the statute under which this stock was issued. It is section 18 of the Corporation act of 1896 (*P. L. of 1896 p. 283*), as amended by the act of 1901 (*P. L. of 1901 p. 245; Dill Corp. 40*), and is in these words:

"Every corporation organized under this act shall have power to create two or more kinds of stock, of such classes, with such designations, preferences and voting powers or restrictions or qualifications thereof as shall be stated and expressed in the certificate of incorporation or in any certificate of amendment thereof; and the power to increase or decrease the stock as in this act elsewhere provided shall apply to all or any of the classes of stock; but at no time shall the total amount of the preferred stocks issued and outstanding exceed two-thirds of the capital stock paid-for in cash or property, and such preferred stocks may, if desired, be made subject to redemption at any time after three years from the issue thereof, at a price not less than par, and the holders thereof shall be entitled to receive, and the corporation shall be bound to pay thereon, dividends at such rates and on such conditions as shall be stated in the original or amended certificate of incorporation, not exceeding eight per centum per annum, payable quarterly, half-yearly or yearly; and such dividends may be made payable before any dividends shall be set apart or paid on the common stock, and such dividends may be made cumulative; provided, the corporation shall set apart or pay the said dividends to the holders of non-cumulative preferred stock before any dividend shall be paid on the common stock; and in no event shall a holder of preferred stock be personally liable for the debts of the corporation; *but in case of insolvency, its debts or other liabilities shall be paid in preference to the preferred stock;* the terms 'general stock' and 'common stock' are synonymous."

The general line of argument of the defendants' counsel is that the mere fact that his clients occupy the position of stockholders does not prevent them from being, in fact, creditors, and entitled to the position of secured creditors, if that be, upon the whole case, their actual position; and for this he cites several authorities.

I have gone through most of them carefully, and while they do, in a measure and to a certain extent, sustain his position, I am of the opinion that they do not meet the present case.

In the first place, the section of the statute under which the preferred stock was in this case issued expressly provides that, in case of insolvency, its debts or other liabilities shall be paid in preference to the preferred stock. And it will be perceived that the defendants have taken advantage of the provisions of that section to give them a valid claim against the company to receive cumulative dividends at the rate of seven per cent. per annum. Upon obvious principles, they are prevented from taking advantage of a part of the act and ignoring the remainder. They must take the act as a whole.

But, in the next place, the terms of the mortgage itself, when carefully examined, are, as it seems to me, fatal to the defendants. The mortgage or trust deed recites that Mr. Brunner, the principal preferred stockholder, has agreed to raise the sum of $18,000 (and this is asserted to be true by the unfiled answer), upon certain conditions, and among them is this: That there should be issued therefor preferred stock, which shall have

"a fixed dividend of seven per cent. per annum, cumulative, to be paid annually on the first day of June, before any dividend is set apart or paid to the common stock, subject to redemption at par on June 1st, 1906, *and in case of the dissolution of said company before said date, to be paid first out of the assets of this company after the payment of its just debts and liabilities and before any distribution or payment to the holders of common stock shall be made.*"

That provision, obviously, was made for the purpose of issuing preferred stock in accordance with the terms of the section of the act above quoted.

Now, if we look further through the mortgage, we find noth-

ing to contradict or weaken that statement until we come to the fourth paragraph of those stating the trusts upon which the trustee was to hold the property; and that is:

"After June 1st, 1906, if the premises have not been before disposed of, to sell and dispose of the said property, either at public or private sale, and out of the proceeds to redeem, at par, all of said preferred stock that may then be outstanding and issued to stockholders, together with any arrears of dividends that may be due upon any of said preferred stock."

It is thus seen (1) that it was only after the 1st of June, 1906, *if the property was not previously disposed of,* that the stockholders were to be paid the principal amount of their stock; and (2) that it fails to state that they were to be paid before the creditors of the company. It is entirely silent as to the *status* of the mortgagees, as against general creditors: a significant circumstance in view of the previous statement of the creditors' priority.

In point of fact, the company had been dissolved, and the property disposed of long before the 1st of June, 1906, so that the contingency mentioned in that fourth paragraph of the trust has not happened.

Again, it is argued that this mortgage was duly on record before any of these debts were incurred. And, for present purposes, I am taking that statement to be true, although I am aware that it may do an injustice to the creditors who are represented by the receiver to so hold, because, in point of fact, that may not be true. The mortgage was recorded in July, 1901, and the corporation became insolvent in November, as we have seen; and it is quite possible that some of the debts which the company owed at the time the mortgage was recorded were not paid before the insolvency, and are represented by some of the existing creditors. But be that as it may, the persons dealing with the corporation had a right to rely upon the section of the statute which I have quoted, and upon the recital in the trust deed, if they saw it on record, which provided that the preferred stockholders were to be paid after the creditors.

It is argued with much force that this construction of the trust deed renders it of little or no value, and enables the pro-

moters of the company, or Mr. Brunner, to practice a fraud on the persons advancing their money on the strength of the mortgage. That position is probably true. The promoters, or Mr. Brunner, probably did assure the subscribers to this preferred stock that they would be secured by a mortgage. I say "or Mr. Brunner" because, according to the amended answer, Mr. Brunner undertook to raise $18,000, and no doubt the directors of the corporation made their calculations for their building and plant and the launching of their business in expectation of receiving that sum. But Mr. Brunner was able to raise only $9,100, with the result that the directors were unable to pay for the building, and failed before the enterprise was fairly launched. It may well be that the defendants made their advances of money entirely upon the representations of Brunner, and that the officers of the corporation are quite innocent of any fraud.

But be that as it may, it seems to me that the general creditors of the corporation are not affected by that fraud. They had a right, as I have said, to rely upon the terms of the statute, and of the mortgage as found on the record, and it was the duty of the persons advancing their money on the strength of this mortgage to scan with great care the instrument which secured them this high rate of interest; and it is not the first time that persons, in their eagerness to secure high rates of interest, have lost their principal.

Now, turning to the authorities cited by the counsel for the defendants, I find the one most in point in his favor to be *Burt* v. *Rattle, 31 Ohio 116 (1876)*. That case would be precisely in point if the statute authorizing the mortgage and the terms of the mortgage were similar to those before the court; but they are not. The statute allowing preferred stock to be issued in that case did not declare that the right of the holders should be subject to the right of creditors, and the mortgage did not so provide, as in this case. The arguments of the counsel on either side, as reported, are elaborate and thorough, and well worth perusal; and, after all, the decision in favor of the priority of the lien of the preferred stockholders in that case was by a divided court; and put upon the distinct ground that the

transaction was a loan of money, and not a creation of preferred stock.

The text of *Jones Corp. B. & M. (2d ed.)* § *627,* is based on *Miller* v. *Rallerman, 47 Ohio 141.* The question there arose, not between the preferred stockholders and general creditors on a winding-up of an insolvent corporation, but between preferred stockholders and common stockholders of a solvent corporation, on a question of taxation. As in the previous case in *31 Ohio,* the argumentation, as printed, is thorough and elaborate. The court held in that case, under the special provisions of the act there involved, that the preferred stockholders were real stockholders, and not creditors; and, as far as it is authority at all, it is authority in favor of the complainant.

The case of *West Chester and Philadelphia Railroad Co.* v. *Jackson, Administratrix of Gray, 77 Pa. 321 (1875),* cited by the defendants' counsel, was an action of *assumpsit,* by holders of preferred stock against the railroad company, to recover dividends under the terms of certificates of stock. The only question seems to have been the right to maintain an action, and the solution of that question depended upon the construction of divers acts of the legislature of Pennsylvania; and it was held that the action would lie. The case presented no question between preferred stockholders and general creditors, such as arises in that now under consideration.

The subject is discussed by Mr. Thompson (*2 Thomp. Corp.* §§ *2278, 2279*), referring to the case of *King* v. *O. & M. R. R. Co., 2 Fed. Rep. 36,* and, on appeal, *sub nom. Warren* v. *King, 108 U. S. 389,* which directly supports the view I have taken in favor of the complainant in this case.

The subject is also discussed by Mr. Cook (*Cook Stock & S. (3d ed.)* § *271*), where a collection of the authorities will be found, and I heartily concur in what he says in that section, as follows:

"Occasionally, however, a mortgage is given by the corporation to secure the payment of dividends on preferred stock and to give it a preference in payment over subsequent debts of the corporation upon insolvency or dissolution. It is difficult to see how such a mortgage would be legal, except where it is issued under express statutory authority. It is diffi-

cult to see how stockholders can contrive legally to obtain a preference over corporate creditors secured or unsecured, as they would do by such a mortgage. Certain it is that the courts will not readily give the stockholders a preference over creditors, even though the preferred stock is by its terms to be a first claim on the property."

In this case I think the position taken by the counsel for the defendants, namely, that the question in all cases is, are the parties actual stockholders, or are they creditors? is the true one. But I am of opinion that they cannot occupy both positions, of stockholders and secured creditors. In this case they have attempted to do so, under a statute which forbids them to occupy the position of secured creditors. Hence their case fails, and I shall advise a decree in favor of the complainant as prayed for in his bill.