# Commonwealth ex rel. *v.* Union Surety & Guaranty Company.

*Trusts and trustees—Trust fund—Contract—Mingling of trust funds and general assets.*

Where a sum of money is held by a surety company as a fund to indemnify the company against loss on a contract of suretyship, and the owner of the fund asks that the money shall be invested so that it shall bear interest or that the company shall pay interest, and the company agrees to pay interest, and thereafter deposits the money in its general account, the owner of the fund after the insolvency of the company has no preference in the distribution of the assets of the company. In such a case even if there had been no agreement as to interest, and the fund was in fact a trust fund, the owner would not be entitled to a preference unless he traced the fund into some specific property, or into some particular moneys or accounts of the insolvent company, which had passed into the hands of its receiver or assignee.

Argued March 11, 1908. Appeal, No. 1, March T., 1908, by Mary B. Jones, from order of C. P. Dauphin Co., Commonwealth Docket, 1904, No. 26, dismissing exceptions to auditor's report in case of Commonwealth ex rel. Hampton L. Carson v. Union Surety & Guaranty Company. Before RICE, P. J., PORTER, HENDERSON, MORRISON, ORLADY, HEAD and BEAVER, JJ. Affirmed.

Exceptions to report of John R. Fox, Esq., and Charles L. Brown, Esq., auditors.

The facts are stated in the opinion of the Superior Court.

*Errors assigned* were in dismissing exceptions to auditor's report.

*G. Von Phul Jones,* with him *Wm. H. Musser,* for appellant.— The surety company stood in a fiduciary relation to appellant and that relation was not changed: Hallett's Est., L. R. 13 Chan. Div. 696.

*David Jay Myers,* with him *Milton C. Work,* for appellee.

OPINION BY PORTER, J., August 00, 1908:

The first specification of error, which complains of the refusal of the court below to order the receiver, upon the petition of the appellant, to pay to her the sum of $506.32 out of the funds which came into his hands, may properly be considered with the seventh specification which alleges that the auditors, appointed to distribute the funds in the hands of the receiver, erred in not allowing the claim of appellant in the sum of $506.32, out of the moneys on deposit at the time of the appointment of the receiver, with the Penn National Bank to the credit of the Union Surety & Guaranty Co. The petition which the appellant presented in the court below, praying for an order on the receiver to pay over the fund in question, sufficiently averred, with the copies of the letters which it embodied, that the sum of $506.32 had been received by the Union Surety & Guaranty Co. in trust to hold the same as security to indemnify the trust company against liability upon certain bonds in which it was surety for the firm of Jones & Wallace, and upon the expiration of that liability and a release from the city of Philadelphia to pay over the said fund to Mary B. Jones. There can be no question that the original transaction fixed this fund with a trust, and the company was bound to hold the money for that especial purpose. Mary B. Jones and the trust company were the only parties who had any interest in the fund and it was competent for them to change the arrangement at any time. This was the condition of affairs when, on February 25, 1904, the duly authorized attorney for Mary B. Jones wrote to the surety company the following letter:

"February 25, 1904.

"Union Surety & Guaranty Co.,
 "Philadelphia, Pa.

"Gentlemen:

"I have received your letter of February 23, 1904, relative to the payment of $506.32 which you say you obtained on the bonds of Jones & Wallace, deposited with your company as collateral security. My object in having those bonds turned into cash was to be able to have this sum invested in

something which would produce interest, as the interest on the same had ceased to run under the notice given by the United States Government. Am I to understand that your company will pay interest on this deposit or am I to try to seek a proper investment for it? As the time within which this money will be payable to Mrs. Mary B. Jones is fast approaching I would prefer to have this money with your company, provided you will allow a reasonable rate of interest.

"Yours respectfully,

"G. VON PUHL JONES."

To this letter the surety company on the same day made the following reply:

"February 25, 1904.

"G. Von Puhl Jones, Esq.,

"Philadelphia.

"Dear Sir:

"Replying to your letter of the 25th inst. relating to the question of interest on the amount deposited as counter security on the bonds of Jones & Wallace, we desire to say that, as a rule, we do not allow interest in cases of this kind. We have, however, taken into consideration the short time in which this money will remain here and have decided to allow you interest at the rate of two per cent per annum.

Trusting this will meet with your approval, we are,

"Yours very truly,

"F. J. THRON,

"Secretary and Treasurer."

Both of these letters were set forth in the petition of Mary B. Jones, and have become part of the record. The money was left with the trust company on this arrangement. The Union Surety & Guaranty Co. became insolvent and closed its doors on March 11, 1904, and on the 17th day of the same month the receiver was appointed by the Court of Common Pleas of Dauphin county. The appellant further averred in her petition that this fund had been deposited by the Union Surety & Guaranty Co. on February 23, 1904, in the Penn National Bank of Philadelphia, and that the said Surety Com-

pany continued from that date until the time when the assets passed into the hands of the receiver, to have a sum in excess of $506.32 on deposit in said national bank. The receiver filed an answer admitting that the appellant had deposited the fund in question and was entitled to participate in the distribution with the other depositors of the company but denying that she was entitled to a preference over other creditors, and averring that by the arrangement of February 25, 1904, the sum became a special deposit and the transaction was relieved of its fiduciary relation and that the fund had become mingled with the general funds of the surety company. The court below refused the prayer of the petitioner upon this branch of the case, without prejudice to her right to present it for payment upon this distribution. The auditors appointed to make the final distribution found that the claim was not entitled to a preference in payments out of the proceeds of the estate of the insolvent trust company and awarded to it the same dividend as was paid to the general creditors.

The manifest purpose of the authorized attorney of the appellant in writing the letter of February 25, was to find an investment for the fund which would produce interest, and the letter expressed a willingness to invest it with the trust company if they would agree to allow a reasonable rate of interest. The reply of the trust company was an acceptance of the proposition and an offer to pay interest at the rate of two per cent. per annum. The money remained with the trust company under this arrangement. These letters constituted a new contract, or rather an explicit modification of the former. The surety company was under this new arrangement bound to pay interest on the money and the appellant was entitled to receive that interest. Interest is something paid for the use of money, and it is contrary to human experience and business practice to suppose that any bank or individual would agree to pay interest on money and at the same time contract to seal it in an envelope or lock it up in a safe deposit box and permit it to remain unused. The deposit was still subject to the condition that it should not be

withdrawn until the liability of the Union Surety & Guaranty Co. upon the bonds of Jones & Wallace had ceased, but in the meantime the appellant was entitled to interest for the use of the money and the surety company was, under the new arrangement, entitled to use the money in its business. This entitled the bank to mingle the fund with its own money and it ceased to be a trust fund which the bank was under any obligation to keep separate and distinct. The action of the court below and of the auditors was free from error and the first and seventh specifications of error are dismissed.

Even if no new arrangement had been made, by the letters of February 25, 1904, the appellant has not, by the case presented in this court, established that the decree of the court below ought to be reversed. The burden was upon the appellant to establish her right to a preference in payment out of the assets of the insolvent corporation, as against the general creditors. This is not a contest between the appellant and the Union Surety & Guaranty Co., the general creditors of the insolvent bank are the parties here interested. Assuming that the fund of the appellant in the hands of the bank was a trust fund, that fact was not of itself sufficient to entitle her to a preference. A trust creditor is not entitled to preference over general creditors of the insolvent merely on the ground of the nature of the claim. To authorize such a preference, some specific recognized equity founded on the relation of the debt to the assets which came into the hands of the receiver or assignee, and which entitles the claimant, according to equitable principles, to a preference in payment out of those assets, must be established by evidence. To entitle one claiming to be a trust creditor to preference, he must trace the trust money into some specific property, or into some particular fund or account of the assignor, which has passed into the hands of the receiver or assignee. "So long as it can be identified either as the original property of the cestui que trust, or as the product of it, equity will follow it; and the right of reclamation attaches to it until detached by the superior equity of a bona fide purchaser, for a valuable consid-

eration, without notice. The substitute for the original thing follows the nature of the thing itself so long as it can be ascertained to be such. But the right of pursuing it fails when the means of ascertainment fail. This is always the case when the subject-matter is turned into money and mixed and confounded in a general mass of property of the same description": Thompson's Appeal, 22 Pa. 16; Farmers & Mechanics National Bank v. King, 57 Pa. 202; Peoples' Bank's Appeal, 93 Pa. 107; Freiberg v. Stoddard, 161 Pa. 259; Jamison's Estate, 163 Pa. 143; Lebanon Trust & Safe Deposit Bank's Assigned Estate, Carmany's Appeal, 166 Pa. 622; Cobson's Estate, 3 Pa. Superior Ct. 244; Miller's Appeal, 218 Pa. 50.

The learned counsel representing the appellant has argued that the evidence established that the fund in question was on the day it was received deposited by the Union Surety & Guaranty Co. in the Penn National Bank, and that it continued on deposit in said bank, the Surety Company having a sum in excess of the amount of the fund to its credit during all of the time, until the receiver was appointed. It is not necessary to determine what the rights of these parties would be if the facts were as stated. The evidence, as the appellant has printed it in her paper book, does not establish those facts, nor is it sufficient to warrant a finding that the facts were as above stated. The evidence which has been presented for our consideration, under the rules of this court, does establish that the fund was deposited, on February 23, 1904, by the Union Surety & Guaranty Co., "in the general fund of that company," in the Penn National Bank. The appellant offered in evidence the book showing the daily balances of the Union Surety & Guaranty Co. with the Penn National Bank, but she has failed to print that account in her paper book, and the rights of the parties are not to be determined by any guess as to what that account would show if it had been printed. The appellees have printed what purports to be a copy of that account, which shows that the balance on deposit in the Penn National Bank, at the close of business on March 10, 1904, was only $25.30. It is sufficient to say that the testimony as printed by the appellant does not estab-

lish her right to a preference in the distribution of assets of the insolvent corporation.

The decree of the court below is affirmed and the appeal dismissed at cost of the appellant.