### G. B. McABEE POWDER & OIL CO. et al. v. PENN–AMERICAN GAS COAL CO.

(Circuit Court of Appeals, Third Circuit. July 18, 1923.)

No. 2984.

**Bankruptcy ☞54—Company operating coal lands under agreement for payment of advances from operations held not a creditor.**

Where contract for operation of bankrupt's coal lands by the W. Co. provided that it should make advances for completion of plant and for working capital and retain 10 per cent. of gross sales prices as compensation, and that balance of net earnings was to be retained by it and applied on advances until fully paid, and that it agreed to carry all such advances until they were paid off by such operations, it was not, after abandoning operations because unprofitable, a creditor of the bankrupt for the amount of its advances, as respected the bankrupt's alleged insolvency.

In Error to the District Court of the United States for the Western District of Pennsylvania; Charles P. Orr and Robert M. Gibson, Judges.

Bankruptcy proceeding by the G. B. McAbee Powder & Oil Company and others against the Penn-American Gas Coal Company. From a judgment for the alleged bankrupt, the petitioning creditors bring error. Affirmed.

See, also, 295 Fed. 628.

George J. Shaffer and W. F. Petty, both of Pittsburgh, Pa., for plaintiffs in error.

Wallace & Patterson, of Pittsburgh, Pa., for defendant in error.

Before BUFFINGTON and DAVIS, Circuit Judges, and McKEE-HAN, District Judge.

PER CURIAM. In the court below the West Penn Fuel Company and certain others, alleging themselves creditors, filed a petition in bankruptcy against the Penn-American Gas Coal Company. The latter defended on the ground that the West Penn Fuel Company was not a creditor, and that it was not itself insolvent, and demanded a jury trial. On such trial of those issues, a verdict was directed by the court in favor of the Penn-American Company, whereupon the West Penn Company took this appeal.

The facts of the case and the nature of the questions involved are set forth in the opinion of the judge below, delivered on its discharge of a motion for a new trial, as follows:

"On August 13, 1921, certain creditors of the Penn-American Gas Coal Company filed a petition in this court, alleging insolvency of the said company, and an act of bankruptcy by the appointment of a receiver at its own request, by reason of insolvency. In due time, said company made answer to said petition, denying both the allegation of insolvency and the act of bankruptcy charged, and at the same time, it demanded a jury trial for the determination of the matters in issue. On November 30, 1921, the matter was heard before the late Hon. Charles P. Orr and a jury. The verdict of the jury was in favor of the respondent, and the petitioning creditors thereupon moved for a new trial. The basis of the motion was alleged error on the part of the trial court in excluding from the consideration of the jury a claim of the West Penn Fuel Company against the alleged bankrupt amounting to $121,000.

"The Penn-American Gas Coal Company was the owner of certain coal lands in Indiana county, Pa. By an agreement with the West Penn Fuel Company, the latter company was made the agent of the owning company for the purpose of completing and operating the property. The West Penn agreed to advance 'in its reasonable discretion' such sums as should be necessary for the completion of the plant and working capital for the operation. By the agreement, the West Penn was to retain 10 per cent. of the gross sales price as compensation for its services, and the balance of the net earnings, after payment of the operating and other expenses, was to be retained by the West Penn Company and applied as a credit upon all advances made by it, until all said advances had been fully paid. The West Penn Fuel Company further agreed 'to carry all of the advances made [to or for the Penn-American Company] until they have been paid off by operations, under the terms hereof.' After improving the plant and operating it for a period, the West-Penn Company found it was losing money and finally suspended operations and notified the Penn-American Company, in substance, that it would advance no more money nor proceed further with its said contract. It declined to pay certain indebtedness it had incurred in the operation of the mine, washing its hands of the whole matter. Later it was adjudged a bankrupt, and its estate was in bankruptcy at the time of the trial of the issue as to the insolvency of the Penn-American Gas Coal Company.

"At the trial of the insolvency issue the West Penn Fuel Company established as a fact, as we consider the matter, that it had expended $121,000 in the improvement and operation of the plant of the Penn-American Company, more than it had received from the sale of coal mined from the property of the said Company. It urged this amount as a provable debt against the estate of the Penn-American Company. The court did not concur with this contention, and charged the jury, in effect, that this was not a provable claim against the estate of the respondent, and that it was not to be considered by the jury in determining the issue."

Following this statement that court then held:

"There can be no question, we think, that the claim of the West Penn Fuel Company was not one provable against the bankruptcy estate of the Penn-American Gas Coal Company under the terms of the contract between the companies. Under said contract the West Penn Fuel Company could reimburse itself for sums expended upon the property of the respondent only through coal mined from said property and sold by it. The indebtedness was conditional and payable out of a special fund—and that fund had failed. The West Penn Fuel Company had refused to proceed with its contract, and had expressly abandoned the property from which the fund was to come. At the time of the trial of the insolvency issue, the West Penn Fuel Company had been adjudged a bankrupt, and prior to that adjudication it had, as stated above, expressly abandoned the mine upon respondent's property. The adjudication alone, and the consequent inability of the West Penn Fuel

Company ever to proceed with its contract, is sufficient to meet the claim of equitable charge, in favor of that company, upon respondent's property. Under all the facts, its rights and proper claims upon that property had ended."

After due consideration had we find no error was committed by the trial judge. The case turned on the written contract, the pertinent provisions of which are printed in the margin.[1] Construing the contract, the trial judge, in his charge to the jury, said:

"This court cannot make contracts for parties. The court takes the contract that the parties themselves made and must construe it. Under this contract the West Penn Fuel Company was obliged to carry on the operations, make advances as it reasonably required, and obligated itself to carry the advancements until they were paid out of the operations, and the method

---

[1] "The party of the first part [West Penn Fuel Company] agrees to advance *in its reasonable discretion*, such sums of money as may be necessary for the completion of said plant, as well as working capital for the necessary operation thereof, and also such sums as may be necessary to maintain the corporate organization of the party of the second part, to meet maturing payments of purchase money for coal lands and rights of way heretofore purchased or now held under agreement of purchase or leased by second party, to pay bills already incurred by the party of the second part in said operations, a list of which liabilities is attached hereto marked Exhibit A, and to pay salaries as hereinafter set forth. All advancements made under this agreement shall be evidenced by the demand collateral notes of the party of the second part to the party of the first part in the same form as the note given under the provisions of the said agreement of February 7, 1920. * * *

"The first party shall retain out of the sales ten (10%) per cent. of the gross sales price f. o. b. mines as compensation for its services under this contract. The balance of the net earnings, after payment of all operating and other expenses herein provided for, shall be retained by the first party and applied as a credit upon all advances heretofore made under the contract of February 7, 1920, or otherwise, or which may be made under this contract, until all of said advances have been fully repaid to the first party with interest thereon at the rate of six (6%) per cent. per annum. * * *.

"The first party shall, on the twentieth day of each month, render a detailed statement to the second party showing the shipments of the preceding month, the operating costs and the net profits, if any, earned. * * * An additional security for the money advanced under this agreement, the agreement of February 7, 1920, aforesaid, or otherwise, the party of the second part does hereby sell, assign, transfer, and set over to the party of the first part all the mined coal on the property of the party of the second part and the property immediately adjoining. * * *

"The party of the first part agrees to carry all the advances made to the party of the second part under the agreement of February 7, 1920, under this agreement, or any other advances heretofore made, until *such advances have been paid off by operations under* the terms hereof, provided that in all particulars the party of the second part shall keep and perform this agreement, and the provisions and obligations thereof. * * *

"The first party agrees to carry all of the advances made to the second party herein referred to, until they have been paid off by operations, under the terms hereof. The agency hereby created and vested in the first party shall be irrevocable, until all such advances or other indebtedness of the second party to first party, however arising, shall be fully paid off with interest as aforesaid. As soon as all such advancements or indebtedness of the party of the second part to the party of the first part have been so repaid, the *operations* of the *properties* shall be *restored* to the second party, the agency hereby created terminated, and thereafter the relations of the parties shall be as defined in the contract of February 7, 1920, above referred to, according to the terms and conditions thereof excepting that the term of the said contract shall be extended so that it shall expire at the end of six (6) years after date hereof, instead of on the date set forth in said contract."

by which they were to be paid out of the operations is specified here. If the parties made a foolish contract, or were not sufficiently far-sighted to anticipate changed conditions in the markets, that is not a matter that troubles the courts at all. We take the language of the contract where it is without doubt, and construe it according to the intention of the parties. It was intended that the fuel company should repay itself out of the operations for all advances which it made in its reasonable discretion, and it was specifically provided that it should carry these operations until they had been repaid. Now, not having done so, they cannot drop the operations, cease to operate, and saddle the corporation, the Penn-American Company, with a large liability which was never contemplated by the parties to the contract should be imposed upon it. Now it does not appear that the fuel company, or its receiver, has any claim in this case other than for moneys which were advanced under this contract. It is therefore not a creditor because of its contract, and you must exclude its claim in the consideration of the liabilities."

We can add nothing to this statement. The parties made the contract provisions referred to the measure of their respective rights, and in doing so they made these provisions the law of this case.

We are of opinion the contract was properly construed and rightly applied by the trial court. The judgment is therefore affirmed.