## UNITED STATES & MEXICAN OIL CO. v. KEYSTONE AUTO GAS & OIL SERVICE CO.

District Court, W. D. Pennsylvania.
February 16, 1924.

No. 1011.

Corporations ⬅544(1)—Attempt to create special class of preferred creditors by agreement to set aside fund held ineffective as against general creditors.

So-called "participating operation certificates," issued by a corporation operating gasoline service stations, by which it undertook to deposit one cent for each gallon of gasoline sold, and 5 per cent. of receipts from other merchandise sold at its stations in a fund to be distributed monthly among the certificate holders until they received the sum called for by their certificates, *held* invalid as against general creditors, as creating a special type of preferred creditors, in fraud of their rights, and the holders *held* to have no rights in the fund so accumulated and remaining undistributed when receivers were appointed for the corporation.

In Equity. Suit by the United States & Mexican Oil Company against the Keystone Auto Gas & Oil Service Company. On distribution of fund in hands of receivers. Decree in accordance with opinion.

E. Lowry Humes, of Pittsburgh, Pa., for plaintiff and receivers.

Leonard K. Guiler, of Pittsburgh, Pa., for creditors.

Francis R. Harbison, of Pittsburgh, Pa., for exceptants.

SCHOONMAKER, District Judge. At the time of the appointment of the receivers in this case, the defendant had on deposit in various banks funds to the aggregate amount of about $15,000, which were deposited in the name of the defendant corporation and designated either as "bond fund" or "sinking fund." These funds grew out of the deposit of defendant in the various banks concerned of one cent per gallon for each gallon of gasoline sold by the defendant, and 5 per cent. of the sale price of merchandise sold by it at its several gasoline service stations, under the terms of a written instrument delivered by the corporation to certain persons for a consideration of $250 each paid by them respectively to the corporation.

This instrument was called a "participating certificate," and was couched in the following language:

"No. 3876.
"United States of America, State of
Delaware.
"$500.                              $500.
"The Keystone Auto Gas & Oil Service
Company.
"Participating Operation Certificate.

"Be it known, that the Keystone Auto Gas & Oil Service Company, a corporation, organized and existing under and by virtue of the laws of the state of Delaware, for and in consideration of the receipt of two hundred and fifty dollars and other good and valuable consideration, agree to create a fund from the operation of a so-called service station in the place designated on the reverse side thereof, and to distribute said fund in the manner herein set forth to the registered owner of this certificate and all other registered owners of certificates of said station. And such distribution shall continue until there shall have been paid on this certificate the sum of five hundred ($500) dollars, whereupon it shall become null and void.

"To provide funds hereinbefore mentioned from the receipts of said station there shall be set aside in a bank one cent on each gallon of gasoline sold, and 5 per cent. on all merchandise sold by said station, and the fund thus created shall be distributed every month among the registered holders of these certificates in said stations as their interest may appear.

"This certificate is registered in the name of the owner on the books of the corporation and such registration is indorsed hereon, and no transfer shall be binding on the corporation unless made on the books of the corporation at the request of the registered owner and similarly indorsed hereon.

"In witness whereof the Keystone Auto Gas & Oil Service Company has caused these presents to be signed by its president, and its corporate seal to be hereunto affixed, and to be attested by its treasurer this ———— day of ————, 19—, A. D. The Keystone Auto Gas & Oil Service Company, by ————, President.

"Attest: ————, Treasurer."

The registered owners of these so-called "participating operative certificates" and the general creditors of the defendant are now claiming the funds which were on deposit in various banks to the credit of the corporation under the designation of "sinking fund" or "bond fund." These various funds came into the hands of the receivers, and they are now before this court for distribution.

The holders of these certificates claim that these funds are a trust fund specially created and earmarked for them, and that, immediately upon deposit in the bank concerned, the sums so deposited became their money, which neither the corporation nor its general creditors had any right to claim. The general creditors claim that these funds were never earmarked and set aside to the individual certificate holders, because the banks concerned could not pay, and the certificate holders could not receive, any part of these funds, except under order of the corporation, which would have to make the distribution and determine the portion going to each certificate holder; that these funds, therefore, are a part of the general assets of the estate, and go to the general creditors. The general creditors contend that these certificate holders are not general creditors of the corporation and have no claim on the general assets of the company; that by the terms of their contract with the company they have no claim upon the funds of the corporation, except such as may have been actually distributed to them under the terms of the contract; that the fund now in court has not been so distributed and is therefore a general fund.

The exact legal status of these certificates is rather puzzling. Many counsel were be-

fore the court at various hearings in the course of this receivership, and there was much discussion as to the status of these certificate holders. No one presented any convincing statement as to the exact nature of the contract obligation of these certificates. Are these certificate holders a species of shareholders, entitled to the special benefits set out in these certificates? If so, the contract of the parties, which they themselves made, merely provides for distribution of certain assets of the corporation to pay that debt. There is no general promise to pay any sum whatsoever. The corporation undertakes only to distribute a certain part of the moneys received by the company from the sale of gasoline and other merchandise until the sum of $500 shall have been distributed. If the contract is a valid one, then, under the rulings of this court, approved by the Circuit Court of Appeals in McAbee et al. v. Penn-American Gas Coal Co., 295 F. 630, payment can only be made out of the sales of gasoline and merchandise to the proportions set out in the contract, and when, by reason of its insolvency, the company ceases to operate, the rights and remedies of the certificate holders end and determine.

On general principles of public policy, we believe that this contract is void as against the claims of general creditors. To permit corporations, by means of certificates of this kind, to appropriate corporate assets to certain classes of creditors or shareholders, whatever they may be, would be an absolute fraud upon the general creditors of the corporations concerned, and would permit the creation of a special type of preferred creditors not contemplated by law. If enforceable at all, this contract should only be enforced as against the stockholders of the company, and not against the rights of creditors who have dealt with the corporation in the ordinary way. To give validity to such a contract would be to establish a legal vehicle for corporation fraud and illegal preference of creditors. These certificate holders cannot claim any part of the corporate funds to the detriment of general creditors.

There is no special equity vested in these certificate holders that should be protected. There is no special equity founded on the relation of these certificate holders to the funds on deposit in the several banks in question that should be protected. The fund in bank bears no special relationship to their money contributions to the company. The money in bank came from the sale of general assets of the company—i. e., gasoline and other merchandise—in the regular and ordinary course of business. To impress this fund with a special trust in favor of these certificate holders would be wrong and a fraud on general creditors.

These certificates evidence an attempt on the part of the defendant to create a novel type of stock ownership, which would be superior in its claim to corporate assets over that of the corporate creditors. There is no equity in their claim or position, and there is no statutory authorization to create such a class of preferred stockholders or creditors, whatever you may call them. The funds in bank were not reduced to their possession; they have no claim on it. The Superior Court of Pennsylvania, we think, correctly states the principles of law applicable to corporate funds such as we have here for distribution:

"Assuming that the fund of the appellant in the hands of the bank was a trust fund, that fact was not of itself sufficient to entitle her to a preference. A trust creditor is not entitled to preference over general creditors of the insolvent merely on the ground of the nature of the claim. To authorize such a preference, some specific recognized equity, founded on the relation of the debt to the assets which came into the hands of the receiver or assignee, and which entitles the claimant, according to equitable principles, to a preference in payment out of those assets, must be established by evidence. To entitle one claiming to be a trust creditor to preference, he must trace the trust money into some specific property, or into some particular fund or account of the assignor, which has passed into the hands of the receiver or assignee. 'So long as it can be identified, either as the original property of the cestui que trust, or as the product of it, equity will follow it; and the right of reclamation attaches to it until detached by the superior equity of a bona fide purchaser, for a valuable consideration, without notice.'" Commonwealth v. Union Surety & Guaranty Co., 37 Pa. Super. Ct. 179.

We therefore conclude that these funds must go to the general creditors, and that these certificate holders have no claim against the same.

A decree may be submitted in accordance herewith, and for the appointment of a special master to take proof of claims of general creditors and report a schedule of distribution in accordance herewith.