## In re HAWKEYE OIL CO.

District Court, D. Delaware.    May 12, 1927.

No. 604.

Bankruptcy ⬥⟹318(1)—Rights of holders of participating operation certificates issued by bankrupt corporation held subordinate to those of general creditors; "creditors of bankrupt" (Bankruptcy Act, § 63 [Comp. St. § 9647]).

Holders of participating operation certificates issued by bankrupt oil company under contract requiring company to set aside certain fund for payment thereof, *held* not "creditors of bankrupt," within meaning of Bankruptcy Act, § 63 (Comp. St. § 9647), and rights are subordinate to those of general creditors, in that they were coadventurers with stockholders, hazarding their investment on continued operation and success of company.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Creditor.]

In Bankruptcy. In the matter of the bankruptcy of the Hawkeye Oil Company. On petitions for review of an order of the referee adjudging mortgage on property of bankrupt, purporting to confer liens in favor of holders of participating operation certificates, to be null and void as against trustee or creditors of bankrupt. Order affirmed.

James I. Boyce, of Wilmington, Del., for trustee.

E. Ennalls Berl, Edmund S. Hellings, Ayres J. Stockley, and John P. Nields, all of Wilmington, Del., for sundry participating operation certificate holders.

MORRIS, District Judge. The primary problem presented by these petitions for review is the ascertainment of the status and rights of the holders of "participating operation certificates" issued or assumed by Hawkeye Oil Company, bankrupt, the owner of bulk and service stations for the storage and sale of gasoline. The relationship of the certificate holders and of the bankrupt arises out of contract. The rights of the holders are fixed, and measured by the terms, substance, and effect of the contract. That contract, unless modified or enlarged by mortgage, is found in the certificates, which provide:

"That * * *, for and in consideration of the receipt of two hundred fifty dollars and other good and valuable considerations, agrees to create a fund from the operation of a so-called service station in the place designated on the reverse side hereof, and to distribute said fund in the manner hereinafter set forth to the registered owner of this certificate and all other registered

owners of such certificates in said station, and such distribution shall continue until there shall have been paid on this certificate the sum of five hundred dollars, whereupon it shall become null and void.

"To provide the fund hereinbefore mentioned, from the daily receipts of said station there shall be set aside in a bank one cent (1¢) on each gallon of gasoline and five per cent. (5%) on all other merchandise sold by said station, and the fund thus created shall be distributed every month among the registered holders of these certificates in said station as their interests may appear."

Certificates of this precise character constitute, apparently, a relatively new phase of corporate financing. Yet the facts before me indicate that in recent years certificates of the same or similar character have been widely or extensively used by companies engaged in the sale of gasoline. The relation which the holder of such certificates bears to the corporation, its creditors, and stockholders, and their respective rights growing out of such relationship, have, so far as I am advised, been considered by the courts in but three instances.

The first was by Judge Schoonmaker in United States & Mexican Oil Company v. Keystone Auto Gas & Oil Service Company, a receivership in equity, in an unreported opinion. At the time of the appointment of the receivers the defendant had on deposit several thousand dollars, designated either as "bond fund" or "sinking fund," which grew out of the deposit by the defendant of the moneys required by the certificates to be set aside from the sale of gasoline and other merchandise. The funds so deposited were claimed by both the certificate holders and the general creditors of the insolvent defendant. Judge Schoonmaker said that the certificates evinced an attempt to create a novel type of stock ownership superior in its claim to corporate assets to that of the general creditors, and that, "on general principles of public policy, we believe that this contract is void as against the claims of general creditors. To permit corporations, by reason of certificates of this kind, to appropriate corporate assets to certain classes of creditors or shareholders, whatever they may be, would be an absolute fraud upon the general creditors of the corporations concerned and would permit the creation of a special type of preferred creditors not contemplated by law. If enforceable at all, this contract should only be enforced as against the stockholders of the company, and not against the

rights of creditors who have dealt with the corporation in the ordinary way. To give validity to such a contract would be to establish a legal vehicle for corporation fraud and illegal preference of creditors. These certificate holders cannot claim any part of the corporate funds to the detriment of general creditors." He relied in part upon G. B. McAbee Powder & Oil Co. v. Penn-American Gas Coal Co., 295 F. 630 (C. C. A. 3), and Commonwealth v. Union Surety & Guarantee Co., 37 Pa. Super. Ct. 179. A decree was entered adjudging the general creditors entitled to the fund.

The precedent set by Judge Schoonmaker was followed, but without written memorandum, by this court in the receivership cause of Cities Service Refining Company v. Go-Gas Company. The decision by John Biggs, Jr., the referee in the pending cause, is the third instance in which the status of certificate holders has been judicially considered. In a well-reasoned opinion the referee held the status of the certificate holders to be analogous to that of sleeping partners, denied that they were entitled to an equitable lien upon the stations of the bankrupt for the unpaid portion of their certificates, and adjudged mortgages upon the property of the bankrupt, purporting to confer liens in favor of the certificate holders, to be null and void as against the trustee in bankruptcy or any creditor of the bankrupt.

That the ascertainment of the relation of the certificate holders to the corporation, and the definition of that relationship in terms of well-established legal relations between individuals or individuals and corporations, is not free from difficulty, Judge Schoonmaker and the referee both concede. The difficulty exists because the contract seems to give rise to rights or incidents hitherto probably not brought into combination, and which, when severally considered, have been recognized as peculiar to different, even contrasting relationships. The petitioners for review take the position that by the contract evidenced by the certificates the bankrupt undertook to do certain things, not directly to repay with interest the money delivered by the certificate holders to the issuing company, but to set aside out of the proceeds arising from the business or operation of the company a fund, to distribute it, and to continue so to do until double the sum of money delivered to the company by each certificate holder had been paid to him. Relying upon Central Trust Co. v. Chicago Auditorium, 240 U. S. 581, 36 S. Ct. 412, 60 L. Ed. 811, L. R. A. 1917B, 580, they further contend that the adjudication in bankruptcy, disenabling the company from creating the fund and continuing its distribution, constituted an anticipatory breach, giving to the certificate holders a provable claim in bankruptcy.

The trustee, on the other hand, takes the position that, though the relation between the certificate holders and the bankrupt is contractual, yet the contract is not of the class that gives rise to the particular relation of debtor and creditor, or to any fixed liability within the meaning of section 63 of the Bankruptcy Act (Comp. St. § 9647). In this I think the trustee's position is correct. The consideration for the undertaking of the bankrupt was the delivery of money. That which the certificate holders were entitled to receive from the issuing company was money, not, however, in the amount paid, with interest, but double that amount, regardless of the period of time, whether long or short, required to obtain it under the terms of the contract. No definite time was fixed by the contract within which the money, principal or increment, should be paid. The absence of such provision is some evidence that the certificates were not given for debts. Jefferson Banking Co. v. Trustees of Martin Institute, 146 Ga. 383, 91 S. E. 463; Kidd v. Puritana Cereal Food Co., 145 Mo. App. 502, 122 S. W. 784.

The money to be paid by the company was not to be paid absolutely and at all events, but from a fund arising from the operation of the company. Whether the holders of such contracts are more analogous to stockholders (Fletcher, Cyclopedia Corporations, § 3631) than to sleeping partners is, I think, not of such vital importance as the underlying fact, upon which I am in accord with Judge Schoonmaker and the referee, that they are not creditors, but are coadventurers with the stockholders, hazarding their investment upon the continued operation, and hence upon the success, of the company. The rights of such persons are subordinate to those of general creditors. See Fletcher, Cyclopedia Corporations, § 3634. Nor is their status improved by the mortgages. Black v. Hobart Trust Co., 64 N. J. Eq. 415, 53 A. 826; Reagan v. First Nat. Bank, 157 Ind. 623, 61 N. E. 575, 62 N. E. 701.

I am of the opinion that the order of the referee is correct. It must be affirmed.