action against the defendant, who took from the treasury of the plaintiff the money which he did.

For these reasons, I am unable to concur in the opinion of Mr. Justice BARRETT. I think the judgment should be reversed, and a new trial ordered.

(47 App. Div. 472.)

## GILKINSON v. THIRD AVE. R. CO. et al.

(Supreme Court, Appellate Division, Second Department. January 30, 1900.)

1. GIFTS INTER VIVOS—EVIDENCE—SUFFICIENCY—CORPORATE STOCK.

In an action involving the validity of an alleged gift inter vivos of corporate stock by decedent to plaintiff, it appeared that decedent was a Catholic priest, and an intimate friend of plaintiff's father; that upon the death of plaintiff's father the decedent assumed a relation of paternal protection towards plaintiff, supplied her with money, and declared his intention to provide for her support after his decease; that thereafter, when plaintiff was an adult, decedent procured a deposit box, placed in it the certificates of stock, handed plaintiff a key to the box, and stated that he had given her the stock; that decedent also retained a key to the box, but exercised no further control over the certificates, and died about two months after so depositing them. *Held*, that there was a complete gift inter vivos of the stock to plaintiff.

2. SAME—EVIDENCE.

Uncorroborated testimony of the donee's aunt is sufficient to establish a gift inter vivos.

3. SAME—TRANSFER OF CORPORATE STOCK.

Where a gift inter vivos of certificates of corporate stock was complete, equity has power to compel a transfer of the stock on the books of the corporation.

Appeal from special term, New York county.

Action by Maude V. Gilkinson against the Third Avenue Railroad Company and James Duffy, as executor, etc., of Thomas F. Ward, deceased. From a judgment for plaintiff entered on the report of a referee, defendants appeal. Affirmed.

The following is the opinion of Referee ROGER A. PRYOR:

The action involves the validity of an alleged gift inter vivos of corporate stock by the decedent to the plaintiff. The essential conditions of such a gift are an intention to give, and a delivery of the subject, with a renunciation by the donor of dominion and control over it. Beaver v. Beaver, 117 N. Y. 421, 22 N. E. 940, 6 L. R. A. 403. The defendant executor challenges the sufficiency of the evidence to establish a gift, and his contention proceeds upon the rigor of the rule applicable to proof of a donatio causa mortis. But the rule is peculiar to that class of cases; being in part a tradition from the civil law, and in part an expedient to supply the absence of the statutory safeguards in a testamentary disposition. Fiero v. Fiero, 5 Thomp. & C. 151: Harris v. Clark, 3 N. Y. 93, 121; In re Manhardt, 17 App. Div. 1, 7, 44 N. Y. Supp. 836; Grey v. Grey, 47 N. Y. 552, 556; Grymes v. Hone, 49 N. Y. 17, 23; Devlin v. Bank, 125 N. Y. 756, 757, 26 N. E. 744. Still the proof of a gift inter vivos must be clear and satisfactory. Tilford v. Bank, 31 App. Div. 565, 566, 52 N. Y. Supp. 142; In re Rogers, 10 App. Div. 593, 594, 42 N. Y. Supp. 133.

Upon the uncontroverted evidence, these facts are apparent: That the alleged donor was a Catholic priest; that the plaintiff attended a school of his parish; that he was an intimate friend of her father; that by the death of her father she became an orphan; that thereupon the donor assumed towards her a relation of paternal protection; that he visited her habitually and familiarly; that he corresponded with her in terms of tender endearment; that he assisted in her education; that he defrayed the expenses of her summer vacations; that

he ministered to her welfare by supplies of money; that he declared his purpose to make provision for her comfortable support after his decease. Such being the disposition and intention of the donor towards the plaintiff, on the 1st of September, 1898, he took her (then an adult) to the Brooklyn City Trust Company, procured a deposit box, placed in it the stock certificates in controversy, and handed her a key to the box, in which she put other of her property. The donor kept his own securities in another box. Thereafter, on the same day, plaintiff's aunt called upon the donor, at his house, to thank him for his benefaction to her niece. He told her that he had bought a box for the plaintiff, asked if she got home all right with the key, said that he had given her the stock, and remarked that: "The little one is independent of everybody now. She has got enough to take care of her." The donor having died suddenly on the 21st October, 1898, the plaintiff took the certificates from the box on the 25th, and has had possession of them ever since.

Upon the facts recited, the defendant probably would not question the validity of the gift. The intention to give is incontestable; and, as the delivery must be secundum subjectam materiam, a delivery of the certificates of stock was a delivery of the incorporeal interest they represent. Fulton v. Fulton, 48 Barb. 581, 591; Allerton v. Lang, 10 Bosw. 362; Beaver v. Beaver, 117 N. Y. 421, 22 N. E. 940, 6 L. R. A. 403. Since it suffices to effectuate a gift that it be placed in the power of the donee "by delivery of the means of obtaining possession," the delivery of the key of the box was a delivery of the certificates. Curry v. Powers, 70 N. Y. 212, 215; Reynolds v. Reynolds, 20 Misc. Rep. 254, 45 N. Y. Supp. 338; Walsh v. Sexton, 55 Barb. 251. The proof of the delivery is sufficient. Rix v. Hunt, 16 App. Div. 540, 546, 48 N. Y. Supp. 988. But the defendant affirms, of some of the facts recited, that they are not sufficiently proved, because shown only by the testimony of the plaintiff's aunt. True, it has been held, against the vigorous dissent of Van Brunt, P. J., that a gift causa mortis is not established by the evidence of a wife alone. In re Farian (Sup.) 28 N. Y. Supp. 95. But the decision proceeded upon the peculiarities of the conjugal relation, and is inapplicable to the present case.

In addition to the facts stated above, it was conceded that the deposit box was taken in the joint names of the donor and donee, and that each retained a key; and from this fact the defendant argues that the donor did not so part with the "dominion and control" of the subject as to render the gift effectual. In Deposit Co. v. Huntington, 89 Hun, 465, 468, 35 N. Y. Supp. 390, it was held that the joint ownership of a box indicated nothing as to the ownership of the contents, and that all that could be inferred from the fact was "the intention of the parties that either might qualify herself to have access to the box." But "a total exclusion of the power or means of resuming possession by the donor is not necessary to the validity of a gift." Cooper v. Burr, 45 Barb. 9. The only significance of the joint ownership and the common keys is as an indication of the intention of the donor; and to assert, in the face of his explicit declaration of a gift to the plaintiff, that he meant all the while to retain the property himself, is to accuse the worthy priest of a wanton and cruel fraud on his confiding friend. Moreover, it is a circumstance of a persuasive import against any inference of an intention on the part of the donor to retain dominion and control of the gift, that, although he survived the deposit of the certificates for a period of nearly two months, he left them, as he had placed them, in the box secured for their safe-keeping, and with the means furnished to the plaintiff of taking them into her personal custody. "The fact that the notes were left by the donor where the beneficiaries might take them after his death was convincing proof that he had not changed his mind, and no further formality to complete the gift was necessary." Fulton v. Fulton, 48 Barb. 582.

Granting all this, however, it is still the contention of the defendant that, as the certificates were not assigned, nor power imparted to transfer them on the books of the company, the gift was inchoate, merely, and so will not be consummated by the judgment of the court. Undoubtedly, equity will not interfere to perfect an incomplete gift, but the argument is fallacious in the assumption that the gift was incomplete. "The general rule is that any delivery of property which transfers either the legal or equitable title is sufficient

to effectuate a gift, and hence it has been held that the mere delivery of certificates of stock is sufficient to effectuate a gift." Ridden v. Thrall, 125 N. Y. 572, 577, 26 N. E. 627, 11 L. R. A. 684. That title to the stock passed by the mere delivery of the certificates, without a written assignment or power to transfer, was expressly adjudged in Walsh v. Sexton, 55 Barb. 251; Westerlo v. De Witt, 36 N. Y. 340, 345; Allerton v. Lang, 10 Bosw. 362; Hackney v. Vrooman, 62 Barb. 650, 670. And this whether the gift be causa mortis or inter vivos. Hackney v. Vrooman, supra; Bradley v. Hunt, 23 Am. Dec. 604, note. The gift being complete, equity has jurisdiction, as against both defendants, to compel a transfer on the books of the company. Cushman v. Jewelry Co., 76 N. Y. 365; Grymes v. Hone, 49 N. Y. 17, 22, 23. Judgment for plaintiff in conformity with the prayer of the complaint.

Argued before GOODRICH, P. J., and BARTLETT, HATCH, WOODWARD, and HIRSCHBERG, JJ.

John R. Kuhn, for appellants.
James A. Patrick, for respondent.

PER CURIAM. Judgment affirmed, with costs, on the opinion of the referee.

---

DIXON v. CITY OF NEW YORK.

(Supreme Court, Trial Term, Kings County. April, 1900.)

1. PHYSICIANS AND SURGEONS—NIGHT SERVICE—CITY'S LIABILITY—APPROPRIATION.

Brooklyn City Charter, tit. 12, §§ 10, 11, declare that a physician duly registered for night medical service, and rendering the same at the request of the police department, shall be entitled to the payment of a fee of $3 therefor from the city, on the patient's failure to pay the same; and title 12, § 11, and title 2, § 18, require it to make an appropriation for such service, not exceeding $3,000 for any one year. *Held* that, when the city's yearly appropriation of $1,500 for night medical service became exhausted before plaintiff's services were rendered, the city was not liable therefor.

2. SAME—FAILURE TO APPROPRIATE.

Greater New York Charter, § 325 et seq., declares that a physician duly registered for night medical service, and rendering the same at the request of the police department, shall be entitled to the payment of a fee of $3 on the patient's failure to pay the same. Section 230, subd. 13, requires a city to appropriate a sum not exceeding $3,000 for such purposes. *Held*, that the latter section was mandatory, and hence, where the city failed to make any appropriation therefor, it was liable for such services, not exceeding $3,000.

3. SAME.

New York Charter, §§ 1541, 1542, providing that no expenses shall be incurred by any department or officers without an appropriation previously made, and that no charge shall exist against the city in excess of the amount appropriated for the several purposes, does not apply to services rendered for the city, where the charter contains a mandatory provision that the municipal assembly shall make an appropriation for the payment of such services, though in fact no appropriation is made.

Action by Thomas Dixon against the city of New York to recover for night medical services. Judgment for plaintiff.

W. L. Carey, for plaintiff.
Alex. McKinney, for defendant.