## In re 35% AUTOMOBILE SUPPLY CO.

### (District Court, S. D. New York. December 8, 1917.)

1. BANKRUPTCY ⬤►318(2)—EFFECT—FIXED LIABILITY.

While an adjudication in bankruptcy, whether voluntary or involuntary, creates an anticipatory breach of the bankrupt's contracts, it does not make an agreement to pay out of an uncertain fund, which may never come into being, a fixed liability, which can be proven under Bankr. Act. Act July 1, 1898, c. 541, § 63, 30 Stat. 562 (Comp. St. 1916, § 9647).

2. ESTOPPEL ⬤►58—EQUITABLE ESTOPPEL—GROUNDS.

Where claimant, who owned 97 per cent. of the stock of a bankrupt corporation, and had a large claim against it, signed an agreement with the corporation to extend the time of payment and receive his pay out of the actual and net earnings, and the agreement further recited that, by reason of claimant's inability to properly manage and operate the business of the corporation, he had procured and induced other persons to purchase one-half of the capital stock owned by him, claimant is not, as against those who acquired one-half his stock, estopped from setting up his original claim, where the company, on subsequent bankruptcy, was so insolvent that nothing would be left for stockholders, even if the claim was not proved; this being particularly true where it did not appear that those taking the stock did so in reliance on claimant's agreement with the corporation, or what, if anything, they paid therefor.

3. CONTRACTS ⬤►187(1)—CONTRACTS FOR BENEFIT OF THIRD PERSON.

In such case, where there was no agreement by claimant, the stockholder and creditor, that he would waive his rights as a creditor, if others would take over a portion of his stock, there was no promise by him for the benefit of a third person which those who took over a portion of his stock could assert on behalf of the corporation, despite claimant's agreement with the corporation as to payment of his claim.

4. GIFTS ⬤►29—CORPORATE SHARES—ENFORCEMENT.

The delivery of a certificate of stock with intention of making a gift of the shares evidenced thereby is ordinarily treated as a valid completed gift, and the courts will enforce the transfer in a suit in equity.

5. PAYMENT ⬤►35—INDEBTEDNESS—CANCELLATION.

An indebtedness may be canceled by a surrender of the bond or notes, or by an execution of a receipt in full, if such is the intention of the parties.

6. NOVATION ⬤►3—CONSIDERATION—SUFFICIENCY.

The principal stockholder of a corporation, who was also a creditor, signed an agreement with the corporation extending the time of payment and agreeing to receive his pay out of the actual and net earnings. The agreement provided for a return of the original notes evidencing the stockholder's claim, and pursuant thereto those notes were delivered to the corporation. *Held* that, as it was the intention of the parties to cancel the old indebtedness and to substitute a new form of indebtedness, the agreement was supported by a consideration, and was enforceable as against the stockholder, even though a new indebtedness in the same amount as the old was created immediately on cancellation of the old.

7. CONTRACTS ⬤►310—RESCISSION—BANKRUPTCY.

In such case, though the corporation subsequently became a voluntary bankrupt, the filing of the voluntary petition cannot be treated as a breach of the contract, warranting complete rescission by the creditor; there being no agreement by the corporation to remain in business, but only an agreement to make payment out of future earnings, if there were any.

⬤►For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

In Bankruptcy. In the matter of the bankruptcy of the 35%
Automobile Supply Company. The proof of claim of L. A. Shatz was
expunged by the referee, and claimant petitions for review. Affirmed.

Heyn & Covington, of New York City, for receiver of Shatz's Es-
tate.        )
Rosenberg & Ball, of New York City, for trustee.

AUGUSTUS N. HAND, District Judge. One Shatz owned 97 per
cent. of the stock of the bankrupt corporation and had a claim against
it amounting to $34,847. Under these circumstances he signed an
agreement with the company to extend the time of payment and to re-
ceive his pay out of "actual and net earnings." The agreement recited
that the company would be unable to meet its obligations to Shatz at
the time of maturity, and that by reason of Shatz's "inability to prop-
erly manage and operate the affairs and business" of the corporation
he had "procured and induced other and various persons to purchase
one-half of the capital stock owned by him." The company, some
time after the agreement was executed, filed a voluntary petition in
bankruptcy, and was subsequently adjudicated a bankrupt without
having made any net profits applicable to the payment of the claim of
Shatz under the terms of the above agreement. The receiver in bank-
ruptcy of Shatz seeks to prove the face of his claim, and the referee
has rejected it on the ground that it was not a fixed liability at the time
of the filing of the petition. Section 63 of the Bankruptcy Act. The
claim was rejected as a matter of law upon the above facts to which
the trustee in bankruptcy in effect demurred.

[1] I think the referee was right in holding that the claim could not
be allowed if the agreement I have mentioned was valid. That in-
strument attempted to substitute something resembling a bond payable
only out of income for an absolute obligation; and while the Supreme
Court in Central Trust Co. v. Chicago Auditorium Association, 240
U. S. 581, 36 Sup. Ct. 412, 60 L. Ed. 811, L. R. A. 1917B, 580, held
that an adjudication in bankruptcy, whether involuntary or voluntary,
creates an anticipatory breach of the bankrupt's contracts, it did not
hold that an agreement to pay out of an uncertain fund which might
never come into being was a fixed liability. Colman v. Withoft, 195
Fed. 250, 115 C. C. A. 222; In re Roth & Appel, 181 Fed. 667, 104
C. C. A. 649, 31 L. R. A. (N. S.) 270.

[2, 3] The claimant, however, raises a much more serious point in
his contention that the agreement was without consideration, and
therefore did not cancel the absolute obligation of the company to pay
Shatz the $34,847 due him before the instrument was executed. It is
to be noted that there has been no proof that the persons who took
one-half of the stock of Shatz did so upon his promise to them to
extend the time of payment of his claim and to receive payment only
out of the net earnings of the company, nor was it shown what, if any-
thing, they paid for the stock. Even if this were shown, the rights of
these stockholders to insist that he adhere to his agreement in proving
his claim against the company would rest upon estoppel, and would
hardly be operative in a case where the company was so insolvent that

nothing would be left for stockholders, even if the Shatz claim were not proved. But no element of estoppel has been shown. Nor can I discover any agreement by Shatz with the company that Shatz would waive his original rights if the stockholders should take stock from Shatz. I therefore find no promise made for the benefit of a third party, and no opportunity to invoke the rule in Lawrence v. Fox, 20 N. Y. 268.

[4-6] The argument of lack of consideration is not, however, persuasive. The agreement provides for a return of the original notes, and this agreement was carried out. The return was obviously intended to operate as an extinguishment of the old indebtedness, and was a discharge of the chose in action by means of a symbolic delivery of the evidence thereof; that is to say, the return of the notes. The delivery of a certificate of stock with the intention of making a gift of the shares evidenced thereby is in most jurisdictions in the United States treated as a valid, completed gift, and the courts will enforce the transfer in a suit in equity. Westerlo v. De Witt, 36 N. Y. 340, 93 Am. Dec. 517; Ridden v. Thrall, 125 N. Y. at page 577, 26 N. E. 627, 11 L. R. A. 684, 21 Am. St. Rep. 758; Gilkinson v. Third Avenue R. R. Co., 47 App. Div. 472, 63 N. Y. Supp. 792. In the same way an indebtedness may be canceled by a surrender of the bond or notes, or by a receipt in full, if such is the intention of the parties. Brink v. Stratton, 112 App. Div. 299, 98 N. Y. Supp. 421, affirmed 188 N. Y. 620, 81 N. E. 1160; Gray v. Barton, 55 N. Y. 63, 14 Am. Rep. 181.

The discharge of the indebtedness evidenced by the old series of notes was sufficient consideration to support the new agreement to pay out of income. The proof of claim for a general indebtedness was therefore of an extinguished obligation and could not be made.

Counsel for the creditor urges upon reargument of this motion that the cases which I have cited relate to discharges of an entire obligation. Here the entire obligation was discharged. It is immaterial that a new one to pay the same amount was substituted, because it was to be paid from an entirely different source, if that source ever came into being, and consequently was a new and different obligation.

[7] The second point urged by counsel for the creditor is equally untenable. It is based apparently upon the theory that the agreement to take payment out of future income can be rescinded because the corporation did not continue in business, but went into voluntary bankruptcy. It is certainly true that if the bankruptcy had been involuntary the point would not be well taken, and I cannot regard a voluntary petition, which, under the circumstances, was evidently justifiable, as a breach of contract which would entitle the corporation to rescind the entire transaction from the beginning. There was an obligation to pay, but no obligation to remain in business under circumstances which rendered payment hopeless.

The motion to expunge the proof of claim was properly granted, and the decision of the referee is affirmed.