**RUDIN v. STEINBUGLER et al.**
No. 8491.

District Court, E. D. New York.
July 1, 1938.

Rabe, Keller & Davis, of New York City (James A. Davis and Leon Quat, both of New York City, of counsel), for plaintiff.

Barber, Fackenthal & Giddings, of New York City (Bruce E. Grunden, of New York City, of counsel); for defendant George E. Steinbugler.

Robinson, Hennessy & Weitzer, of New York City (Joseph S. Robinson, of New York City, of counsel), for defendants Anna M. Steinbugler and Park Equine Amusement Corporation.

BYERS, District Judge.

This is a suit in equity by the trustee of the above-named bankrupt, having for its object the setting aside of a conveyance made by the bankrupt on or about December 20, 1936, alleged to be in fraud of his creditors, of all of the capital stock of the corporate defendant then said to have been owned by the bankrupt; and the subsequent alleged transfer of the property of the corporation to the wife of the bankrupt; and it is sought to have the decree adjudge that a certain license issued to the wife of the bankrupt by the Commissioner of the Park Department be declared to be held in trust for the plaintiff; also a money judgment is sought against each of the defendants for the value of the capital stock and license.

The plaintiff is acting pursuant to the provisions of § 70 of the Bankruptcy Act, paragraph a, subdivision (4), 11 U.S.C.A. § 110(a) (4), and a brief recital of facts is requisite.

George E. Steinbugler, the bankrupt, was so adjudicated in this court on January 31, 1938.

He testified that he was admitted to the Bar in 1917 in the Second Department, and during the years 1935, 1936 and 1937 was a practicing attorney.

In 1935, in addition to his professional activities, he caused to be organized the corporate defendant, for the purpose of operating ponies for children to ride upon, in Prospect Park, Brooklyn.

One hundred shares of capital stock were issued, of which fifty were the property of his cousin, Edward Steinbugler. About December 8 or 9, 1935, the bankrupt purchased the latter's stock for $850.00, thus becoming the owner of the entire capital stock of the corporation.

It was a money-making enterprise; that is to say, for the years 1936 and 1937 an excess of above $3,000.00 of receipts over disbursements was shown.

The corporate property consisted of ten or twelve ponies, saddles, bridles, blankets, etc., and the bankrupt said that the cost thereof was in the neighborhood of $1,450.00.

No corporate books, records or papers whatever were offered in evidence, save minutes of a meeting of directors said to have been held on January 10, 1938, and two diaries containing entries of cash receipts, and therefore the figures above stated are lacking in precision.

The purchase of Edward Steinbugler's stock was accomplished in part through the appropriation by the bankrupt of $1,500.00 belonging to his client, Mrs. Hittel; he collected a $1,500.00 mortgage of hers, which was in his custody as her attorney, in two instalments; namely, $1,000.00 in November of 1935, and $500.00 in November of 1936. He used this sum to pay $850.00 to his cousin, and the balance for bills of the corporation, and in November of 1936 was unable to turn over this $1,500.00 to his client. Instead, he gave her six notes for $250.00 each, and paid but one of them.

 He says that he transferred and delivered the entire one hundred shares of the corporate stock as a gift to his wife on or about December 20, 1936, and it is that transaction which lies at the base of the plaintiff's cause; if the bankrupt was insolvent at the time, the conveyance was fraudulent as to creditors (N.Y.Debtor and Creditor Law, Consol.Laws, c. 12, § 273, in effect April 1, 1925). That section reads:

"§ 273. *Conveyances by insolvent.* Every conveyance made and every obligation incurred by a person who is or will be thereby rendered insolvent is fraudulent as to creditors without regard to his actual intent if the conveyance is made or the obligation is incurred without a fair consideration."

The test of insolvency under the statute is defined in § 271 as follows:

"§ 271. *Insolvency.* 1. A person is insolvent when the present fair salable value of his assets is less than the amount that

will be required to pay his probable liability on his existing debts as they become absolute and matured."

Turning now to the testimony, it is found that the assets and the liabilities of the bankrupt on or about December 20, 1936, were as follows:

Assets

| Residence 945 East 37th St., Brooklyn | $ 8,500.00 |
| Cash in bank | 200.00 |
| Accounts receivable | 900.00 |
| Household furniture | 275.00 |
| *Office furniture | 545.00 |
| Cash surrender value life insurance | 304.00 |
| Total | $10,724.00 |

\*Not listed as an asset in the bankrupt's schedules.

Liabilities

| Mortgage on residence, interest and taxes | $ 9,250.00 |
| Indebtedness to executor of his father's estate | 4,000.00 |
| Indebtedness to brother | 1,500.00 |
| Indebtedness to Mrs. Hittel | 1,500.00 |
| Indebtedness to estate of John Carey | 350.00 |
| Current obligations | 200.00 |
| Total | $16,800.00 |

The margin of insolvency is not as large as the difference between these figures, because the bankrupt was possessed of an undivided one-seventh vested remainder in the estate of his deceased father, which he listed in his schedules as having a value of $2,000.00, but which was asserted on this trial to have been worth $5,000.00. If the latter figure be taken, which is doubtful since the assets of the estate embraced the first two liabilities of the bankrupt, there will still be an excess of liabilities over assets, on the part of the bankrupt.

The only disputed items omitted from the above recapitulation are an asserted one-third interest in Howard Beach. lots, which the bankrupt's attorney values at $2,133.00, and an item of $650.00 called "investment in New York Avenue property". There was no proof of the value of the former property, and the testimony shows that on June 6, 1918, the bankrupt executed, acknowledged and delivered a deed of that property to the executrix of his father's estate.

Apparently this was intended to be given in connection with the bankrupt's borrowings from the executrix of his father's estate, but whether it be regarded as a mortgage or an absolute conveyance is unimportant for present purposes, since there is no testimony tending to show that the property had any value on November 20, 1936.

As to the $650.00, there is no testimony to support this as an asset of the bankrupt. It is simply shown to be an expenditure made in a speculative enterprise, which has been lost.

It is accordingly found that the bankrupt was insolvent when he transferred this stock, as he testified, without consideration, to his wife.

It is unnecessary to discuss at length the efficacy of the transfer as such. The stock certificates were not indorsed and the alleged delivery of them by the bankrupt to his wife falls far short of establishing any such transaction. The certificates recited that the stock was transferable only on the books of the corporation by the holder thereof in person or by duly authorized attorney by the surrender of the certificates properly indorsed.

Many cases are cited for the bankrupt to establish that certificates of stock need not be indorsed in order to accomplish a transfer, if the intention is otherwise established. Some of the cases seem to go so far, although none of them involves a test instigated by a trustee in bankruptcy, but the critical nature of such a transaction seems to be recognized in Dunscombe v. Crocker-Wheeler Electric Mfg. Co., 232 App.Div. 137, 249 N.Y.S. 223, for the opinion reads in part as follows (page 228):

"Nor do we agree with the view that the mere delivery of the certificate unindorsed was ineffectual to constitute a pledge, if the intentions of the parties be otherwise, and no rights of creditors of the pledgor are involved."

Here the rights of creditors are involved.

Gifts inter vivos have been upheld upon the mere delivery of a certificate of deposit, Westerlo v. DeWitt, 36 N.Y. 340, 93 Am.Dec. 517, and of a bank book, Ridden v. Thrall, 125 N.Y. 572, 26 N.E. 627, 11 L.R.A. 684, 21 Am.St.Rep. 758.

Gilkinson v. Third Avenue R. R. Co., 47 App.Div. 472, 63 N.Y.S. 792, involved

an unindorsed stock certificate placed in a safe deposit box and the key given to the donee.

Wangner v. Grimm, 169 N.Y. 421, 62 N.E. 569, involved an unindorsed promissory note.

Lipten v. Columbia Trust Co., 194 App. Div. 384, 185 N.Y.S. 198, involved an unindorsed check.

Miller v. Silverman, 247 N.Y. 447, 160 N.E. 910, involved securities, namely, bonds and unindorsed certificates of stock placed in a safe deposit box in an envelope upon the outside of which were the words "All in envelope belong to Anna C. Miller."; also within the envelope there was a slip of paper on which the decedent had written: "Whatever is in this envelope belongs to Miss Anna C. Miller." The opinion says on this subject: "The certificates of stock, which were issued in the name of New, although unindorsed by him, as well as the bonds, which were payable to bearer, were susceptible of transfer by a manual delivery with intention to give."

See also: Matter of Hurd's Estate, 162 Misc. 283, 294 N.Y.S. 273.

This record does not present such a transaction as is revealed in the above cases. In addition to the questionable delivery, the conduct of the bankrupt subsequent to November 20, 1936 (which was incidentally the date upon which he signed the notes to Mrs. Hittel) was consistent with a retention of control and management of both the stock and the corporation. His wife did not deposit any of the collections made from corporate operations; at most, she received some $315.00 in cash from the superintendent, as against over $4,000.00 received by the bankrupt and deposited in his own account. From that he drew his own checks in payment of corporation bills and, so far as the evidence discloses, there was no change whatever in the handling of either the corporate affairs or the corporate funds from December 20, 1936, to and including January 10, 1938.

The corporation operated a concession in Prospect Park, and the bankrupt collected nearly all of the proceeds and used part of the funds in the payment of his own personal bills. He continued to act as president, and his conduct was consistent only with a continued management and control of the stock and the corporation. Any asserted delivery of the certificates of stock to his wife was so lacking in substance as to constitute merely a mental process the genesis and duration of which cannot be identified in any legal sense. If any transfer was attempted, it was at a time when the bankrupt was insolvent, and the plaintiff is entitled to have it adjudged to be void, with the result that the stock of the corporate defendant will be deemed to be the property of the bankrupt, and therefore available to his trustee, to be administered as an asset.

Two other transactions should be mentioned: First, the execution of a corporate chattel mortgage to Mrs. Hittel to secure the individual notes of the bankrupt. Apparently that was dated November 20, 1936, prior to the alleged gift of the stock to the wife, and it seems not to have been filed until April of 1937. Since the alleged mortgagee is not a defendant here, it is unnecessary to pass judgment upon the subject, but there is difficulty in perceiving how the alleged chattel mortgage can stand as a lien against corporate assets, since it was given to secure the payment of an individual indebtedness which had its origin in the misappropriation of a client's funds by her lawyer. If that is so, the corporation had property, and the stock had some value on December 20, 1936.

Second, the execution and delivery of an absent bill of sale purporting to transfer all of the corporate assets, by the corporation to the bankrupt's wife, on January 10, 1938, which was eighteen days before the bankrupt filed his voluntary petition.

In substance, this was a transfer by the bankrupt of his property held in sheerest corporate guise, within the prohibited period prior to the filing of his petition, which is the more readily seen because of the manner in which the bankrupt disregarded the corporation; he carefully omitted all formalities necessarily attendant upon the preservation of the corporate entity; namely, there were no corporate stock records or accounts, no income tax reports, social security tax reports or returns, and no corporate elections or meetings with one exception (that of January 10, 1938); nor was there any recognition by the bankrupt that this corporate defendant was other than a department of his own activities; consequently there is no difficulty in recognizing in its true aspect the attempted transfer to the wife of the ponies and equipment as a transfer made

by him of what was in truth and fact his own individual property. The decree will provide that this attempted transfer was without legal effect and void.

The remaining aspect of the case presents an interesting question.

The license under which the concession was operated during part of 1936 and all of 1937 expired on December 31 of the latter year. During November and December, it appears that the bankrupt telephoned to the officials in charge, seeking to arrange a renewal, and this was tacitly agreed to, but not granted until January 12, 1938, when a new license was issued, in the name of the bankrupt's wife. It appears that the bankrupt declared that he no longer desired (and this is his own testimony) to conduct the business in a corporate style, but that the management would be the same, and consequently the new license was applied for and issued to Mrs. Steinbugler individually, and presumably she is now operating under it.

The plaintiff argues that this license should be viewed as something upon which a constructive trust must be imposed, since it was acquired in the wife's name, as part of a fraudulent scheme to put the bankrupt's property in the corporate enterprise beyond the reach of his creditors. It is contended that, in November and December of 1937, the bankrupt, through the corporation, was possessed of an intangible asset to be characterized as an expectancy of renewal, which was later realized, and that the renewal must therefore accrue to the benefit of the trustee, as part of the bankrupt's property.

To this the defendants answer that the existing license was never the property of the bankrupt; that, at most, it is a privilege to operate a concession, which was issued to Mrs. Steinbugler as an individual, and that nothing passed to the trustee in bankruptcy of her husband by virtue thereof. However plausible this contention may be, the fact remains that without the bankrupt's property, namely, the ponies and their equipment, Mrs. Steinbugler would not have been in a position to apply for the license; since it was granted to her, she has operated the enterprise, presumably in a profitable manner if the history of the earlier years has been repeated, and it is not thought that a court of equity is powerless to reach those profits; they would not have arisen except through the use of that which in equity and good conscience belongs to the bankrupt's creditors, and to deny the trustee any relief in respect thereof would to that extent condone a transaction which is offensive in the eyes of the law.

It is not necessary to decide more than that the bankrupt's wife, and therefore the bankrupt, cannot be permitted to retain the income arising from the continued use of property fraudulently conveyed, the surrender of which to the trustee is being required.

It is accordingly concluded that the decree to be entered hereon may provide that Mrs. Steinbugler must account to the trustee for the operations which she has conducted with the property herein described belonging to the bankrupt.

It is not expedient to separate the ponies and their equipment from the 1938 operations of the concession, for without the former the latter would never have been undertaken.

Accordingly the decree is to provide that the attempted or alleged transfer of the stock from the bankrupt to his wife is null and void, and that the property therein is now vested in the trustee in bankruptcy; that the alleged transfer of the corporate assets to the wife is void and of no effect; and that the operations of the corporate property by the wife must be accounted for by her to the trustee, and if need be, the accounting in that behalf will be sent to a Special Master.

Settle decree.